CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 10 2012

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 7:12cr00006 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| TREMAYNE QUINTA BUGG, | ) | |
| | ) | By: Samuel G. Wilson |
| Defendant. | ) | United States District Judge |

The United States has charged the defendant, Tremayne Quinta Bugg, with possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The matter is before the court on Bugg's motion to suppress. Bugg contends that law enforcement officers violated the Fourth Amendment to the United States Constitution by "detaining, arresting, and searching him" on December 17, 2011, and that the court should therefore suppress all physical evidence derived from that incident. Considering the totality of the circumstances, the court disagrees with Bugg and finds that reasonable suspicion justified law enforcement officers in stopping Bugg. Accordingly, the court will deny Bugg's motion to suppress.

I.

On December 17, 2011, law enforcement officers staked out an apartment on Hunt Avenue in Roanoke, Virginia, in an attempt to arrest an armed-and-dangerous, six-foot five-inch, 250-pound African American male fugitive with a violent criminal history. During the stake-out, officers watched as a dark-colored sport-utility vehicle approached the apartment and seemingly noticed the police presence. The SUV stopped, made a mid-block u-turn, and sped away from

the scene. The officers left their positions and commenced a search for the SUV. In short order, the officers found the vehicle parked in a nearby high-crime neighborhood. The SUV's driver, who fit the fugitive's description (but who, officers later discovered, was not the fugitive), exited the vehicle and got into a white sedan. The sedan pulled away and, after driving a short distance, turned around and re-approached the SUV. Suspecting that their fugitive was now in the sedan, one of the officers activated his car's emergency lights and initiated a stop. Two other officers, riding in an unmarked car behind the SUV, saw Bugg exit the front passenger-side of the parked SUV and focus his attention on the now-stopped sedan. One of the officers in the unmarked car exited his vehicle and directed Bugg to stop in order to answer some questions. Bugg responded unintelligibly, turned away from the officers, and made a movement toward his waistband. Fearing that Bugg was reaching for a weapon, both officers raised their own weapons and ordered Bugg to put his hands up. Bugg complied with that order and the officers' subsequent instruction to place his hands on the SUV's hood.

Soon after, a third officer arrived and asked Bugg to identify himself. When Bugg reached for his wallet to retrieve his identification, he inadvertently exposed a handgun holster on his right hip. The officer removed a loaded .32-caliber Smith & Wesson revolver from the holster. When Bugg then divulged (without prompting from the officers) that he was recently released from prison after serving time for a felony drug charge, the officers handcuffed Bugg and searched him. The officers found a seven-gram bag of crack cocaine and a small bag of "a green leafy substance." Officers then transported Bugg to another location and Mirandized him. Bugg admitted that the revolver was his and that he was on his way to deliver the crack cocaine at the time of the stop.

2

## II.

Bugg contends that law enforcement officers violated the Fourth Amendment "by detaining, arresting, and searching him," without reasonable suspicion, requiring the suppression of all evidence uncovered during the search. The court disagrees and finds, in light of the circumstances, that the officers on the scene were justified in briefly stopping Bugg to speak with him, and that the initial stop quickly revealed that he was a felon in possession of a firearm justifying the arrest and search that followed.

An officer may stop and briefly detain an individual for investigative purposes when there is a "reasonable suspicion," based on articulable facts, that criminal activity is afoot. Illinois v. Wardlow, 528 U.S. 119, 124 (2000); Terry v. Ohio, 392 U.S. 1, 30 (1968). The totality of the circumstances, including known information and any reasonable inferences, determines whether reasonable suspicion is present. United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008). "An officer's articulated facts must in their totality serve to eliminate a substantial portion of innocent travelers before reasonable suspicion will exist." United States v. McCoy, 513 F.3d 405, 413 (4th Cir. 2008) (citing United States v. Sokolow, 490 U.S. 1, 7–11 (1989)).

The concept of reasonable suspicion is "a commonsensical proposition," under which a court should credit "the practical experience of officers who observe on a daily basis what transpires on the street." United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993). Conduct justifying a stop may be entirely lawful. It is well-established that lawful but suggestive behavior justifies a stop so that an officer can "resolve the ambiguity." Wardlow, 528 U.S. at 125. And, because a Terry stop is less intrusive than a full-blown arrest, the reasonable suspicion standard is not as onerous. Park v. Shiflett, 250 F.3d 843, 850 (4th Cir. 2001); see also

United States v. Glover, 662 F.3d 694, 698–700 (4th Cir. 2011) (holding that an officer's early morning observation of a man watching and then approaching a gas-station attendant in a high-crime area constitutes reasonable suspicion to stop); McCoy, 513 F.3d at 412–13 (holding that an officer's observation of a vehicle in a parking lot where drug sales had previously occurred, its movement to another known drug-lot, and the vehicle's occupant briefly entering another vehicle before it left at a high rate of speed constitutes reasonable suspicion to stop); United States v. Harris, 39 F.3d 1262, 1268–69 (4th Cir. 1994) (holding that an officer's observation of a man leaving an apartment after a confidential informant advised the officer that a drug delivery was imminent constitutes reasonable suspicion to stop); United States v. Moore, 817 F.2d 1105, 1107 (4th Cir. 1987) (holding that an officer's nighttime observation of a man walking away from a deserted area where a burglar alarm had just sounded constitutes reasonable suspicion to stop). While the standard is not as onerous as a full-blown arrest, an officer may not rely on a "mere hunch." United States v. Arvizu, 534 U.S. 266, 274 (2002).

 Here, the court concludes that the officers were not acting on a "mere hunch" but rather had reasonable, articulable suspicion to initiate a Terry stop based on the following suspicious behavior: first, the SUV approached their position, seemed to spot their presence, stopped, abruptly u-turned, and sped away; second, after locating the SUV in a nearby high-crime neighborhood, a man fitting the description of the fugitive they were seeking exited the SUV and entered a waiting sedan that pulled away, drove a short distance, turned around, and re-approached the SUV; and third, when officers stopped the sedan, Bugg exited the parked SUV and focused his attention on the traffic stop.

4

Viewed in isolation, each of these facts would offer little support for stopping Bugg. But an officer seeing these events unfold sequentially and employing common sense could be reasonably suspicious that criminal activity was afoot and that Bugg was somehow involved. By the time they initiated the Terry stop, officers had good reason to believe that Bugg was connected in some meaningful way to a suspected dangerous fugitive and that he had participated in highly suspicious vehicle maneuvers. That is, with due credit to the officers' practical experience, and in light of the *totality* of the circumstances, including known information and reasonable inferences, the officers had a reasonable, articulable suspicion that criminal activity was afoot, and were therefore justified in asking Bugg to stop in order that they might "resolve the ambiguity." Moreover, the facts, taken together, served to eliminate a substantial portion of innocent travelers. Each event succeeding the stop (Bugg making a movement toward his waistband, officers drawing down on Bugg, Bugg inadvertently revealing his hip holster and divulging his felony conviction, and officers arresting and searching Bugg) lawfully flowed from that moment. Accordingly, the court finds no constitutional violation requiring suppression.

### III.

For the foregoing reasons, it is hereby **ADJUDGED** and **ORDERED** that Bugg's motion to suppress is **DENIED**.

**ENTER**: This May 10, 2012.

_____
UNITED STATES DISTRICT JUDGE